1

2

3

4 UNITED STATES DISTRICT COURT

5 DISTRICT OF NEVADA

6 IGNINIO HERNANDEZ,                                    3:13-cv-00083-MMD-WGC

7                                    Plaintiff,        **REPORT & RECOMMENDATION OF**
                                                       **U.S. MAGISTRATE JUDGE**
8            v.
                                                       Re: ECF No. 132
9 RENEE BAKER, et. al.

10                                   Defendants.

11

12          This Report and Recommendation is made to the Honorable Miranda M. Du, United

13 States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14 28  U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15 Defendants' Motion for Summary Judgment. (ECF No. 132.)[1] Plaintiff filed a response (ECF

16 Nos. 146, 146-1, 147) and Defendants' filed a reply (ECF No. 150). Plaintiff filed a motion to

17 file a sur-reply (ECF No. 151) which Defendants oppose (ECF No. 152). The court has

18 addressed that motion in a separate order.

19          After a thorough review, the court recommends that Defendants' motion be granted as to

20 all claims except the excessive force claim against defendants Malay and Rowley in Count III.

21                                    **I. BACKGROUND**

22          Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

23 proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 11.) The

24 events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP).

25 (*Id*.) Defendants are Renee Baker, Gloria Carpenter, Robert Huston, Dr. Michael Koehn, Kelly

26 Lyons, Paul Malay, Dr. David Mar, Curtis Rigney, and Christian Rowley. (Screening Order,

27

28

--------

[1] Refers to court's Electronic Case Filing number.

ECF No. 10; ECF No. 86 (order substituting Gloria Carpenter and Michael Deweese for Doe defendants).)

Deweese was subsequently dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) because Plaintiff failed to timely effectuate service. (*See* ECF No. 119.) The defendant Plaintiff identified as Correctional Officer Lying in the amended complaint (ECF No. 11 at 2 ¶ 5) was subsequently identified as Correctional Officer Erik Lyons. The Attorney General's Office did not accept service on his behalf, and submitted his last known address under seal. (*See* ECF Nos. 65, 66, 67.) A summons was issued, but was returned unexecuted. (*See* ECF Nos. 69, 73, 74.) It appears Plaintiff never served Erik Lyons; therefore, the court issued a notice of intent to dismiss Eric Lyons without prejudice pursuant to Federal Rule of Civil Procedure 4(m) on November 4, 2015. (ECF No. 153.) In preparing this report and recommendation, the court discovered that it previously issued an order requiring Plaintiff to serve Erik Lyons or show good cause why he had not been served by October 18, 2014. Plaintiff failed to do so; therefore, the court will is recommending that Erik Lyons be dismissed pursuant to Rule 4(m) in this report and recommendation.

Plaintiff was allowed to proceed with the following claims in this action: (1) a First Amendment access to courts claim in Count I against defendants Malay, Rigney, and Huston; (2) a First Amendment retaliation claim in Count I against defendants Malay and Rigney; (3) Eighth Amendment conditions of confinement claims in Count II against defendants Malay, Rowley, Rigney, and Baker; (4) an Eighth Amendment claim of deliberate indifference to a serious risk to his safety in Count II against defendants Malay and Rigney; (5) an Eighth Amendment deliberate indifference to serious medical needs claim in Count II against defendants Lyons, Carpenter, Dr. Mar, and Dr. Koehn; and (6) an Eighth Amendment excessive force claim against defendants Malay and Rowley in Count III. (Screening Order, ECF No. 10.)

Defendants now move for summary judgment. The parties' arguments will be discussed in detail below.

///

///

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

1    come forward with evidence which would entitle it to a directed verdict if the evidence went

2    uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

3    the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

4    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

5    omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

6    defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

7    an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party

8    failed to make a showing sufficient to establish an element essential to that party's case on which

9    that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-

10   25 (1986).

11          If the moving party satisfies its initial burden, the burden shifts to the opposing party to

12   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

13   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

14   material fact, the opposing party need not establish a genuine dispute of material fact

15   conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a

16   jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*

17   *v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation

18   omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

19   non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith*

20   *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid

21   summary judgment by relying solely on conclusory allegations that are unsupported by factual

22   data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings

23   and set forth specific facts by producing competent evidence that shows a genuine dispute of

24   material fact for trial. *Celotex*, 477 U.S. at 324.

25          That being said,
     [i]f a party fails to properly support an assertion of fact or fails to properly address

26   another party's assertion of fact as required by Rule 56(c), the court may: (1) give
     an opportunity to properly support or address the fact; (2) consider the fact

27   undisputed for purposes of the motion; (3) grant summary judgment if the motion

28

- 4 -

and supporting materials—including the facts considered undisputed—show that
the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine
the truth but to determine whether there is a genuine dispute of material fact for trial. *See
Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all
justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is
merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-
50 (citations omitted).

### III. DISCUSSION

**A. Count I- Access to Courts (Malay, Rigney, and Huston)**

**1. Summary of Allegations**

Plaintiff alleges that on December 3, 2011, a search of his cell was conducted by
defendants Malay and Rigney. Plaintiff claims that they threw away and otherwise destroyed
some of his legal documents, including evidence, legal research and drafts of civil actions and
criminal appeals. Plaintiff avers that he complained to defendant Huston but he did nothing and
was complacent with Malay's and Rigney's actions. (ECF No. 11 at 8-9.) He contends that they
hindered his access to the courts because he was forced to abandon some causes of action and
was unable to seek redress from the courts for other violations. (*Id*. at 9.)

**2. Summary of Argument**

Defendants argue that no legal paperwork was thrown away, and only some trash, string
and plastic bags were thrown away. (Malay Decl., ECF No. 132-3 ¶ 7; Rigney Decl., ECF No.
132-7 ¶ 6; ECF No. 132-5 at 3; ECF No. 132-6 at 2.) They further assert that he has not
identified any actual injury as a result of their alleged actions. (ECF No. 132 at 9.)

In his opposition, Plaintiff reiterates his claim that Malay and Rigney ripped up his legal
paperwork. (*See* ECF No. 146 at 38, 39, 54, 57, 104, 134-35, 136-37, 139, 158-59; ECF No. 146-
1 at 208, 212.)

///

///

### 3. Analysis

Inmates have a constitutional right of access to the courts. *See Lewis v.  Casey*, 518 U.S. 343, 346 (1996). To establish a violation of the right of access to the courts, a prisoner must establish that he or she suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived.  *Id*. at 348 (citation omitted); *see also Alvarez v.  Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir.  2008) (citation omitted) (explaining, "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim of denial of access to courts). "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim." *Id*. at 348 (citation and internal quotation marks omitted).

Where a prisoner asserts a backward-looking denial of access to courts claim-one seeking a remedy for a lost opportunity to present a legal claim-he or she must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the official acts frustrating the litigation," and "a remedy that may be awarded as recompense but [that is] not otherwise available in some suit that may yet be brought." *Christopher v.  Harbury*, 536 U.S. 403, 415, 417 (2002); *see also Avalos v.  Baca*, 596 F.3d 583, 591 n.  8 (9th Cir.  2010).

The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions.  *See Lewis*, 518 U.S. at 353 n.  3, 354-55; *Simmons v.  Sacramento Cnty.  Super.  Ct.*, 318 F.3d 1156, 1159-60 (9th Cir.  2003) ("a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim"). The right of access to the courts is only a right to bring complaints to the federal court and not a right to discover such claims or to litigate them effectively once filed with a court.  *See Lewis*, 518 U.S. at 354-55; *Cornett v.  Donvan*, 51 F.3d 894, 898 (9th Cir.  1995).

The only specific lawsuit that Plaintiff references in connection with this claim is a case brought in the Carson Township Justice Court, Case No. 12 SC 00175 1C. (*See* ECF No. 146 at 134-35.) As Defendants point out, Plaintiff was in fact able to file this lawsuit, but the case was dismissed without prejudice and with leave to amend after a hearing on September 27, 2012. (*See* ECF 150-1 at 2.) Plaintiff attempted to file an amended complaint, but it was dismissed for

1    lack of jurisdiction because Plaintiff alleged violations of his constitutional rights. (*Id*. at 5.)

2    Plaintiff has not submitted evidence that he suffered actual injury such as the inability to file a

3    case or meet a filing deadline in connection with his access to courts claim. Therefore, summary

4    judgment should be granted in Defendants' favor.

5    **B. Count I- Retaliation (Malay and Rigney)**

6        **1. Summary of Allegations**

7        Plaintiff claims that defendants Malay and Rigney destroyed his legal documents,

8    including evidence, legal research and drafts of civil actions and criminal appeals, in retaliation

9    for Plaintiff's civil litigation against them. (ECF No. 11 at 9.)

10       **2. Summary of Argument**

11       Defendants argue that no legal paperwork was thrown away, and only some trash, string

12   and plastic bags were thrown away; therefore, there was no adverse action taken against Plaintiff.

13   (ECF No. 132 at 11; Malay Decl., ECF No. 132-3 ¶ 7; Rigney Decl., ECF No. 132-7 ¶ 6;

14   ECF No. 132-5 at 3; ECF No. 132-6 at 2.) In addition, they contend Plaintiff's cell was searched

15   because after Plaintiff refused to do a finger swipe of his mouth during pill call, as it was

16   believed he might be hoarding medication in his cell. (ECF No. 132 at 11.) Defendants also

17   claim that Plaintiff's protected rights have not been chilled as he has been able to file grievances

18   as well as cases in this court. (*Id*. at 11-12; ECF No. 132-17.) Finally, they assert that the action

19   taken in searching Plaintiff's cell advanced a legitimate correctional goal, *i.e.*, regulating

20   medication. (*Id*. at 12-13.)

21       As stated above, Plaintiff maintains that Malay and Rigney ripped up or otherwise

22   destroyed his legal paperwork. He notes that Defendants did not find any medication being

23   stockpiled in his cell as a result of the search. (ECF No. 146 at 57.)

24       **3. Analysis**

25       "Section 1983 provides a cause of action for prison inmates whose constitutionally

26   protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791

27   F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a

28   claim consists of five elements:

(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005))

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt*, 65 F.3d at 806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (internal quotation marks omitted, quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]'" *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). Timing of the events surrounding the alleged retaliatory action may constitute circumstantial evidence of retaliatory intent. *See Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989).

A plaintiff's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment") (citation omitted).

"[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568-69).

While Plaintiff cites to evidence that he complained about Malay and Rigney's alleged action of destroying his legal paperwork *after* the fact (*see* ECF No. 146 at 104, 136, 137, 139, 158-59), he has submitted no evidence to support his claim that they destroyed his legal

- 8 -

paperwork *because* they were the target of a civil lawsuit he had initiated against them. With no evidence to support the causal element of his claim, the court recommends that summary judgment be granted in Defendants' favor.

**C. Count II- Eighth Amendment Conditions of Confinement (Malay, Rowley, Rigney, and Baker)**

### 1. Summary of Allegations

Plaintiff avers that on December 3, 2011, defendants Malay and Rigney removed him from his cell and placed him in the shower cage while his cell was being searched, in full restraints and he was left there from 7:30 a.m. until 3:45 p.m. (ECF No. 11 at 12.) Plaintiff claims he received no food or drinking water, and had no access to toilet facilities during this time period. (*Id*.)

Plaintiff further alleges that defendants Malay, Rowley, and Rigney did not feed Plaintiff meals on the following dates: August 22, 2011, September 9, 2011, October 1, 2011, November 18, 24, and 26, 2011, and December 3, 4, 5, 6, 9, 10, 2011. (*Id*.) He contends that he complained to Warden Baker, but no action was taken to rectify the situation. (*Id*. at 13.)

### 2. Summary of Argument

According to Defendants, on December 3, 2011, at 6:40 a.m., during pill call, Officer Malay witnessed Plaintiff refuse to conduct a full finger mouth sweep to verify he had taken his medication per policy. (Malay Decl., ECF No. 132-3 ¶ 4.) Sergeant Gittere was notified and ordered unit staff to conduct a search of Plaintiff's cell to see if he was storing his medication. (*Id*. ¶ 5.) At 8:30 a.m., Plaintiff complied with orders to be removed from his cell and placed in the Unit Shower. (*Id*. ¶ 6.) Correctional Lieutenant Huston arrived to supervise the search of Plaintiff's cell. (ECF No. 132-4.)

After the cell search, Officer Malay ordered Plaintiff to submit to an unclothed body search, which he refused, stating: "I do not strip out for anyone." (Malay Decl. ECF No. 132-3 ¶ 7.) Lieutenant Huston was notified and arrived at approximately 10:00 a.m. (*Id*. ¶ 8.) At this time, Plaintiff was lying on the shower floor stating he had a spinal injury and could not get to

his knees to have the leg restraints removed and then to his feet to have his wrist restraints removed so he could submit to an unclothed body search. (Malay Decl. ECF No. 132-3 ¶ 8; ECF No. 133-1 at 2) Medical staff were alerted and arrived to evaluate Plaintiff, who stated he had a spinal injury and could not get up. (Malay Decl. ECF No. 132-3 ¶ 9; Carpenter Decl., ECF No. 132-8 ¶ 4; ECF No. 133-1 at 2.) Defendant Carpenter observed Plaintiff was able to lie on his belly and move to a seated position with his handcuffs on. (Carpenter Decl., ECF No. 132-8 ¶ 5; ECF No. 133-1 at 2.) He was also observed standing, and did not require further treatment. (Carpenter Decl., ECF No. 132-8 ¶ 5; ECF No. 133-1 at 2.) Defendant Carpenter filled out a medical incident report at approximately 11:55 a.m. that day consistent with her observations. (Carpenter Decl., ECF No. 132-8 ¶ 5[2]; ECF No. 133-1 at 2.)

Lieutenant Huston told Plaintiff that he had to comply or he would be left in the shower and asked every hour to comply. (*Id.* ¶ 10; ECF No. 132-4 at 2, 3.)

At approximately 2:15 p.m., after refusing several orders to comply, Sergeant Gittere, Lieutenant Huston and two CERT officers arrived, and Plaintiff complied with orders and was removed from the shower without incident and was placed back in his cell at approximately 2:30 p.m. (*Id.* ¶ 13; ECF No. 132-4 at 2, 3.)

Officer Rowley asserts that the accusation about not feeding Plaintiff his meals is false, and he does not recall Plaintiff being refused a meal while he "dished" the food in Plaintiff's unit. (Rowley Decl., ECF No. 132-10 ¶ 7.) Instead, he asserts that if Plaintiff was refused a meal it would be due to not following proper policies during feeding, and this would be reported to the senior unit officer or lead officer and logged into the segregation log book. (Rowley Decl., ECF No. 132-10 ¶ 8.) Officer Rigney similarly states that he never withheld food from Plaintiff. (Rigney Decl., ECF No. 132-7 ¶ 6.)

Defendants reiterate that Plaintiff was placed in the shower cell at 8:30 a.m. after he refused to undergo an unclothed body search, and he repeatedly refused orders to submit to such a search, and so he remained in the shower, until he agreed to the search at 2:15 p.m. and

---

[2] There are two paragraphs labeled as paragraph five in this declaration. This notation is to the second paragraph five.

1   returned to his cell at 2:30 p.m. Thus, he was in the shower for a total of six hours, and missed

2   one meal. Defendants argue this is not an objectively, sufficiently serious deprivation. He does

3   not allege that he suffered any harm to his health as a result of this deprivation.  Defendants

4   similarly argue that with respect to the other dates Plaintiff contends he was denied meals, he

5   does not allege he was in immediate danger, and in any event, Defendants deny that they refused

6   Plaintiff any meals.

7           According to Plaintiff, he was in the shower cage starting at 7:30 a.m. (ECF No. 146 at

8   41.) He asserts that Huston arrived at his cell around 1:20 p.m., and Plaintiff was lying on the

9   floor of the cell and asked for medical assistance. (ECF No. 146 at 43-44.) Plaintiff claims

10  Huston told him that he would have to get himself up. (*Id*.) In an affidavit that appears to have

11  been submitted in connection with Plaintiff's disciplinary appeal, he contends that Huston

12  returned at 2:00 p.m. with medical staff, who said they could not do anything for him if he could

13  not stand up. (ECF No. 146-1 at 204, 207-10.) He asserts that Huston returned at 3:45 p.m. and

14  said if he did not stand up he would be left in the shower longer, so Plaintiff mustered the

15  strength to stand up. (*Id*.)

16          Concerning his meals, in his opposition, Plaintiff first asserts that he did not have enough

17  time to eat his meal on August 20, 2011. (ECF No. 146 at 6-7.) He filed a grievance on

18  August 20, 2011, stating that Rowley and Malay were not giving him enough time to eat his

19  food. (ECF No. 146 at 116-118.) The response to the grievance cites Operational Procedure (OP)

20  711, which states that inmates are allowed approximately twenty minutes to eat meals, which the

21  grievance responder said was sufficient. (ECF No. 146 at 114.) He sent a kite to "Brooks

22  Warden" on August 21, 2011, stating that Rowley and Malay failed to serve him his breakfast

23  and lunch on August 21, 2011. (ECF No. 146 at 120.)  Plaintiff then states that he was not given

24  dinner on the following dates: August 21, 23, 2011; September 9, 2011; October 1, 2011;

25  November 18, 24 and 26, 2011; December 3, 4, 5, 6, 9, and 10, 2011. (ECF No. 146 at 19, 35;

26  146-1 at 213.) He filed a grievance on December 8, 2011, that stated that Rigney failed to give

27  him his dinner on that date. (ECF No. 146 at 105).

28  ///

### 3. Analysis

#### a. Standard

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [he] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Although conditions of confinement in prison may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

"The circumstances, nature, and duration of a deprivation of ... necessities must be considered in determining whether a constitutional violation has occurred." *Johnson*, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." *Hoptowit*, 682 F.2d at 1259; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1214, *as amended*, 75 F.3d 448 (9th Cir. 1995) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.").

Where a prisoner alleges injuries stemming from unsafe or unhealthy conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). This standard involves an objective and subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Second, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

### b. Shower Incident

The court agrees with Defendants that the alleged deprivation is not objectively, sufficiently serious. Taking the facts in the light most favorable to Plaintiff, he was in the shower for approximately eight hours, in full restraints, lying on the floor, without access to food, water or toilets. Plaintiff does not dispute Defendants' contention that he would have missed only one meal during this time period. Nor does Plaintiff offer any evidence that he requested and was denied water or use of the toilet. Therefore, to the extent his claim is predicated on the shower incident, the court recommends that summary judgment be granted in Defendants' favor.

### c. Meals

With respect to the alleged denial of meals, Plaintiff's own evidence reveals that he was not denied all meals on the dates indicated, but rather, was not given dinner on those dates. Other evidence he provided indicates that his complaint centered on not being given sufficient time to eat his meals. Taking the facts in the light most favorable to Plaintiff, as the court must, the court concludes that the failure to serve Plaintiff one meal on thirteen occasions over a period of five months is not objectively, sufficiently serious so as to violate the Eighth Amendment. *See, e.g., Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009) (denial of sixteen meals over a twenty-three day period was a sufficiently serious deprivation). Therefore, summary judgment should be granted in Defendants' favor as to this claim.

### D. Count II- Eighth Amendment Deliberate Indifference to Safety (Malay and Rigney)

#### 1. Summary of Allegations

Plaintiff claims that while he was in the shower cage on December 3, 2011, defendants Malay and Rigney harassed him by loudly accusing him of being a "child molester" and "baby killer," "so that other inmates would shun and harass plaintiff." (ECF No. 11 at 12.)

#### 2. Summary of Argument

Defendants Malay states that he never called Plaintiff a "child molester" or "baby killer." (Malay Decl, ECF No. 132-3 ¶ 10.) Defendants argue that there is no evidence that Malay and Rigney knew of an excessive risk of harm to Plaintiff even if it were assumed they did make

1    these statements. (ECF No. 132 at 16-17.) He does not assert there were other inmates around

2    who could hear the alleged name calling. (*Id*.)

3          **3. Analysis**

4          Under the Eighth Amendment, prison conditions should not "involve the wanton and

5    unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime

6    warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison

7    conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates

8    receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

9    guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)(quoting

10   *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

11         As indicated above, Plaintiff must establish that the deprivation was objectively,

12   sufficiently serious, and that the defendant knew of and disregarded an excessive risk to his

13   safety. *See Farmer*, 511 U.S. at 834, 837. To meet their burden on summary judgment,

14   Defendants must provide evidence establishing: (1) that the deprivation suffered by the Plaintiff

15   is not sufficiently serious; or (2) that the Defendants did not know of and act with deliberate

16   indifference toward a risk to Plaintiff's safety. *Id*. at 834-35.

17         The only reference to this claim in Plaintiff's opposition is the statement that he does

18   assert there were other inmates around who heard Defendants calling Plaintiff names. (ECF No.

19   146 at 58.) Plaintiff provides no other details such as who those inmates were, where they were

20   located, or why these statements would have posed a risk of harm to him if these inmates heard

21   them. The court finds that Plaintiff did not present factual evidence sufficient to raise a genuine

22   dispute of material fact as to whether  Defendants knew of and disregarded an excessive risk to

23   Plaintiff's safety. Therefore, summary judgment should be granted in their favor on this claim.

24   **E. Count II- Eighth Amendment Deliberate Indifference to Serious Medical Needs (Lyons,**

25   **Carpenter, Dr. Mar, Dr. Koehn)**

26         **1. Summary of Allegations**

27         Here, Plaintiff alleges that on December 3, 2011, he became dizzy and fatigued and lost

28   consciousness, collapsing on the floor of the shower cage, and could not get up due to a pre-

- 14 -

existing back injury, the pain from his fall and being handcuffed and shackled. (ECF No. 11 at 12-18.) He asserts that defendants Lyons and Carpenter saw that he had fallen in the shower cage while in handcuffs and leg restraints and knew he could not get up, yet they deliberately failed to assist Plaintiff or render any medical care. (*Id*. at 14.) He avers that he saw defendants Dr. Mar and Dr. Koehn for his injuries following this incident and following the excessive force incident (discussed below in Count III), but they failed to treat his medical needs including his chronic pain. (ECF No. 11 at 15.)

### 2. Summary of Argument

According to Defendants, when Plaintiff was lying on the floor of the shower stating he could not get up, medical staff were notified and arrived to evaluate Plaintiff, who again stated he had a spinal injury and could not get up. (Malay Decl., ECF No. 132-3 ¶ 9.) Once Lieutenant Huston and the medical staff left, Plaintiff was observed getting up and down just fine. (Malay Decl., ECF No. 132-3 ¶ 11.) Specifically, defendant Carpenter asserts that when she responded to the unit, she observed Plaintiff able to lie on his stomach and then move to a seated position. (Carpenter Decl., ECF No. 132-8 ¶ 5.) He was also observed standing. (*Id*.) According to defendant Carpenter, Plaintiff did not require further treatment. (*Id*.) This is reflected in the incident report she filled out. (ECF No. 133-1 at 2.)

Defendants assert that on December 3, 2011, Plaintiff was seen by medical twice: once when Plaintiff was placed in the shower cell and Nurse Carpenter evaluated him and evaluated he could move and needed no further treatment; and later that day, following the incident at the food slot with Officer Malay where defendant Carpenter evaluated Plaintiff again and advised him to wash the dried blood and take ibuprofen for his superficial injuries. (ECF No. 132 at 19.)

Regarding Plaintiff's allegation that Dr. Mar and Dr. Koehn did not provide treatment for his chronic pain, Defendants assert that Plaintiff was seen many times for his complaints of pain, but his medical records are filled with notations that Plaintiff was observed being able to move around without difficulty and indications that Plaintiff was malingering. (*Id*. at 19-21.) They maintain that the records reflect that Plaintiff does not have a serious medical condition, and instead, was manipulative and malingering. (*Id*.) He has been repeatedly given medication in the

1    form of ibuprofen, and when he was admitted to determine whether he needed something

2    stronger, it was determined he had no discernable condition causing his pain. (*Id*. at 20-21.)

3         Plaintiff maintains that he called to the Defendants while he was in the shower cage, but

4    his requests for assistance were ignored. (ECF No. 146 at 42.) He states that defendant

5    Carpenter's statement that he could get up is false. (*Id*. at 47.)

6         With respect to his claim against Dr. Koehn and Dr. Mar, he asserts that a serious

7    medical need includes the existence of chronic pain. (ECF No. 146 at 10.) He cites the numerous

8    kites he filed complaining of chronic pain. (*Id*. at 64.)

9         **3. Analysis**

10            **a. Standard**

11        A prisoner can establish an Eighth Amendment violation arising from deficient medical

12   care if he can prove that prison officials were deliberately indifferent to a serious medical need.

13   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the

14   examination of two elements: "the seriousness of the prisoner's medical need and the nature of

15   the defendant's response to that need." *McGuckin*, 974 F.2d at 1059; *see also Akhtar v. Mesa*,

16   698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

17   2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

18   further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d

19   at 1059 (citing *Estelle*, 429 U.S. at 104);  *see also Akhtar*, 698 F.3d at 1213. Examples of

20   conditions that are "serious" in nature include "an injury that a reasonable doctor or patient

21   would find important and worthy of comment or treatment; the presence of a medical condition

22   that significantly affects an individual's daily activities; or the existence of chronic and

23   substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131

24   (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was

25   wired shut for several months demonstrated a serious medical need).

26        If the medical need is "serious," the plaintiff must show that the defendant acted with

27   deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

28   omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

**b. Shower Incident**

Plaintiff alleges that the medical staff who responded to the shower should have done something to assist him in getting up and rendering medical services. Defendants provide the declaration of defendant Carpenter along with her incident report. According to defendant Carpenter, when she responded to the unit, she observed Plaintiff able to move to a seated position from his stomach, and he was also observed standing, and did not require further treatment. (Carpenter Decl., ECF No. 132-8; ECF No. 133-1 at 2.)

In response, Plaintiff merely states, without elaboration, that Carpenter's statement that Plaintiff could get up is false. (ECF No. 146 at 47.) This is insufficient to raise a genuine dispute

- 17 -

of material fact to defeat Defendants' motion for summary judgment. This conclusory statement is unsupported by any evidence to illustrate, *factually*, how her statement is false. Plaintiff cannot avoid summary judgment by relying solely on a conclusory allegation unsupported by any facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiff is required to set forth specific facts supported by competent evidence in order to establish a genuine dispute of material fact. *Celotex*, 477 U.S. at 324. Plaintiff has failed to do so; therefore, the court recommends that summary judgment be granted in Defendants' favor as to this claim.

### c. Dr. Koehn and Dr. Mar

Plaintiff submitted approximately 137 kites that he filed between December 2011 and July 2015. (*See* ECF Nos. 146, 146-1.) Most of the kites complain about chronic pain or ask for medication refills, and receive a response that Plaintiff's medication would be refilled, that he had been seen or would be scheduled to be seen by a medical provider, or that the issue had been or was being addressed. (*See e.g.*, ECF No. 146-1 at 4, 5, 6, 7, 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 26, 30, 31, 32, 33, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 54, 57, 58, 60, 61; ECF No. 146 at 216, 220, 222, 223, 226, 229, 232, 235,236, 238, 239, 241, 242, 246, 248, 249, 250, 253, 257, 258, 259, 260, 261, 262, 264, 265, 266, 267, 268, 269, 270, 276, 277, 279, 282.) Many of the kites do not contain a specific medical request at all, and frequently include Plaintiff's citation to Eighth Amendment legal standards. (*See e.g.*, ECF No. 146-1 at 3, 10, 45, 52, 53, 55, 102; ECF No. 146 at 214, 225, 226, 228, 230, 231, 233, 234, 235, 247, 263, 278, 281.)

A review of Plaintiff's medical records indicates that Plaintiff was seen by ESP medical providers on numerous occasions. His complaints of pain were noted, he was examined and prescribed pain medication in the form of ibuprofen, but his medical providers could not discern an objective cause of Plaintiff's claims of chronic pain. In fact, it was frequently noted that medical providers or prison staff observed Plaintiff engaging in daily activities with no difficulty, he was able to walk to and from his exams and get on and off the exam table without difficulty, leading the providers to conclude that Plaintiff was malingering and being manipulative.

When Dr. Koehn saw Plaintiff for complaints of back pain on September 28, 2011, he noted that Plaintiff was malingering and being manipulative in order to get to another prison yard. (ECF No. 132 at 5; ECF No. 133-3 at 2.) On December 10, 2011, Plaintiff complained of chest and back pain as a result of the incident on December 3, 2011, and was taken to the emergency room, but was discharged after he did not appear to be in distress or pain. (ECF No. 133-3 at 3-4.) On December 14, 2011, Dr. Koehn noted that Plaintiff exhibited a new specific limp when he was brought into the exam, but was able to get up and down from the exam table, contorting his back significantly in the process. (ECF No. 133-3 at 4.) Dr. Koehn noted Plaintiff may be malingering, and said no additional work up was necessary. (*Id*.) On January 8, 2012, he refused to be seen by nursing staff at sick call. (ECF No. 133-3 at 5.)

On January 11, 2012, he submitted a kite complaining of chest pain and was brought to the infirmary for an EGC, but demanded an MRI. (*Id*.) He was seen again for complaints of acute low back pain following the shower incident. (*Id*.) It was noted that he had a limp that appeared exaggerated as Plaintiff was then able to get up and down from the table and sit without difficulty. (*Id*.) He was referred to Dr. Mar and was prescribed a pain pack with three refills and was advised to do stretching exercises for the low back. (*Id*.)

On March 13, 2012, it was noted that Plaintiff's chest x-ray and EKG from his December 10, 2011 emergency room visit were unremarkable. (*Id*. at 6.) It was reported that according to custody staff, Plaintiff was seen moving about with no problems, but then when he was informed he was going to see the doctor, he started having difficulty moving. (*Id.*) He was advised to move and stretch to improve the arthritis in his back. (*Id*. at 7.) On March 29, 2012, he was able to get on and off the exam table without difficulty, and was able to bend forward at the waist without difficulty. (*Id*. at 8.) On April 11, 2012, he complained of pain down his right leg that was exacerbated by sitting, but when he was asked to describe the pain he would not say whether it was sharp, dull, burning, electric, pressure, etc. (*Id*.)

He was seen on August 21, 2012, for complaints of pain on his shoulder blade, neck and spine. (*Id*. at 10.) According to custody, he was able to kneel down and get up from a kneeling position slowly, and was able to get up and down from the exam table without difficulty. (*Id*.) On

- 19 -

1   September 16, 2012, he was seen for complaints of spine and shoulder pain. (*Id*. at 11.) It was

2   noted he had limited movement of the right arm and shoulder. (*Id*.) He was referred to the

3   provider to discuss concerns regarding a cat scan he had requested. (*Id*.)

4        On September 26, 2014, he reported that he had right shoulder operation where pins

5   were placed, and his right arm was subsequently "torsioned" which possibly damaged the

6   placement of the pins and caused him long term pain in the right shoulder. (*Id*.) He claimed that

7   the left shoulder was injured during a conflict with staff. (*Id*.) He also complained of lower back

8   pain. (*Id*.) He was able to get up and down from the exam table without difficulty. (*Id*.) He was

9   assessed with joint pain and an indication of spinal nerve impingement. (*Id*.) An x-ray of the

10  right shoulder was ordered to evaluate pin placement. (*Id*.)

11       Plaintiff was seen on May 17, 2013, for complaints of chronic shoulder and spine pain.

12  (*Id*. at 13.) He was described as having a steady gait and being able to get up and down from the

13  exam table without difficulty. (*Id*. )With spinal palpation, Plaintiff did not grimace or change

14  facial expressions. (*Id*.)  He was seen again for complaints of right shoulder and spine pain on

15  July 1, 2013. (*Id*.) Plaintiff was able to get up and down from the exam table without difficulty.

16  (*Id*.) During the exam, Plaintiff became agitated, and moved without any difficulty. (*Id*.)

17  Dr. Koehn was unable to address his shoulder due to his being in restraints. (*Id*.) His shoulder

18  pain was described as stable, with no change in severity, and Dr. Koehn indicated he was likely

19  manipulating with respect to the back pain. (*Id*.)

20       On August 13, 2013, Plaintiff complained of neck and shoulder pain. (*Id*. at 14.) He was

21  observed as ambulating steadily and easily, and on this occasion he "made show of having a

22  difficult, painful time of getting onto exam table," while he had no grimace or change in facial

23  expression. (*Id*.) Plaintiff was advised that if he was in such pain and required medication

24  stronger than ibuprofen, he may need to be monitored in the infirmary. (*Id*.)

25       Plaintiff was seen for shoulder and spine pain on September 3, 2013, and indicated that

26  ibuprofen was no longer working. (*Id*. at 15.) Plaintiff walked into the exam room without a

27  limb, and was able to get up and down from the exam table without difficulty. (*Id*.) He then left

28  the exam room with a pronounced limp, which was diminished as he walked back to his cell.

- 20 -

1    (*Id.*) He was ordered to be admitted to the infirmary for observation to determine whether he had

2    joint pain or was malingering. (*Id.*) On September 4, 2013, he was able to perform activities of

3    daily living without difficulty. (*Id.* at 16.) On September 5, 2013, he had no difficulty getting on

4    or off the exam table and had no limp when he left the exam room. (*Id.* at 15.) His observation

5    was to continue. (*Id.*) On September 9, 2013, it was noted he got up and down to the door several

6    times during the day without difficulty. (*Id.* at 17.) He was up and about in his cell on September

7    10 and 11, 2013. (*Id.*) He was seen by Dr. Koehn on September 12, 2013, and asked for a CT

8    scan of the spine. (*Id.* at 18.) He was "informed of the inappropriateness of this procedure, as

9    well as the cancer potential." (*Id.*) Dr. Koehn stated that Plaintiff was well documented with no

10   impairment of his activities of daily living during his admittance to the infirmary the prior week.

11   (*Id.*) He concluded there was no evidence of back pain after one week of observation. (*Id.*)

12        Plaintiff was consistently prescribed ibuprofen for his pain as a keep-on-person

13   medication. (ECF Nos. 133-4, 133-5.)

14        Plaintiff's allegations that Dr. Koehn and Dr. Mar ignored his complaints of chronic pain

15   are belied by Plaintiff's medical records. Plaintiff has presented, at most, a difference of opinion

16   regarding the course of treatment chosen by his physicians. He asserts that failing to provide him

17   with an MRI, x-ray or cat scan or other radiologic tool and not prescribing him something

18   stronger than ibuprofen constitutes deliberate indifference. To sustain a claim for deliberate

19   indifference based on a difference of opinion, Plaintiff must establish that the course of treatment

20   chosen by his physicians was medically unacceptable under the circumstances, and in conscious

21   disregard of an excessive risk to Plaintiff's health. Plaintiff has not introduced evidence to raise a

22   genuine dispute of material fact to defeat Defendants' motion for summary judgment on this

23   basis. Plaintiff was repeatedly assessed and evaluated for his complaints of chronic pain. He was

24   consistently prescribed pain medication in the form of ibuprofen. Despite repeated evaluations,

25   and admission to the infirmary for observation, his doctors could not discern an objective cause

26   of his pain, and instead noted that he was able to function appropriately in contradiction to his

27   complaints of disabling pain. In light of this evidence, the court cannot conclude the treatment

28   choices made by Dr. Koehn and Dr. Mar were medically unacceptable or made in conscious

1    disregard of an excessive risk to Plaintiff's health. Therefore, summary judgment should be

2    granted in favor of Dr. Mar and Dr. Koehn as to this claim.

3    **F. Count III- Eighth Amendment Excessive Force (Malay and Rowley)**

4        **1. Summary of Allegations**

5            In this count, Plaintiff alleges that on December 10, 2011, Malay and Rowley kicked,

6    punched, twisted, bent and slammed his arms in the food slot door of his cell without

7    justification. (ECF No. 11 at 19.)

8        **2. Summary of Argument**

9            According to Defendants, later in the day on December 3, 2011, at approximately 5:20

10   p.m., Plaintiff was to receive pills during pill call. (Malay Decl., ECF No. 132-3 ¶ 14.) Officer

11   Malay ordered Plaintiff to turn on his light and step to the back of his cell, and he complied.

12   (Malay Decl., ECF No. 132-3 ¶ 15; Rowley Decl., ECF No. 132-10 ¶ 4.) Officer Malay opened

13   the food slot and the nurse placed the cup of medication on the food slot, and Officer Malay

14   ordered Plaintiff to come take his medication. (Malay Decl., ECF No. 132-3 ¶ 15.) Plaintiff then

15   rushed to the food slot and stuck both arms out of the food slot spilling his medication onto the

16   tier. (Malay Decl., ECF No. 132-3 ¶ 16; Rowley Decl., ECF No. 132-10 ¶ 5.) Plaintiff became

17   physically aggressive and attempted to grab the nurse. (*Id.*) Officer Malay stepped in front of the

18   nurse and pushed both of Plaintiff's arms to the side to protect the nurse. (Malay Decl., ECF No.

19   132-3 ¶ 16.) Plaintiff then spit at him and hit him in the mid-section and tried to grab his duty

20   belt and pull him to the food slot. (*Id.*) Officer Malay used both hands and put Plaintiff in a wrist

21   lock (goose neck) and attempted to push his arms back to the food slot. (*Id.* ¶ 17.) Officer

22   Rowley applied a gooseneck on Plaintiff's right arm and gave verbal commands for Plaintiff to

23   put his arms back into his cell. (Rowley Decl., ECF No. 132-10 ¶ 5.) He continued to spit and

24   assault staff. (Malay Decl., ECF No. 132-3 ¶ 17; Rowley Decl., ECF No. 132-10 ¶ 6.) Officer

25   Malay was able to get Plaintiff's arm back in his cell and secured the food slot without getting

26   any of his appendages closed in the slot. (Malay Decl., ECF No. 132-3 ¶ 17; Rowley Decl., ECF

27   No. 132-10 ¶ 6.)

28

1    Lieutenant Huston was notified and responded at approximately 5:30 p.m., and ordered

2    Officer Malay to stand at the door and observe Plaintiff's actions while Lieutenant Huston

3    contacted the warden and medical staff. (*Id*. ¶ 18.) While standing at the door, Plaintiff made

4    several threats to pay someone on the tier to kill Officer Malay's "punk ass." (*Id*. ¶ 19.) At

5    approximately 5:43 p.m., Lieutenant Huston responded with medical staff, and Plaintiff was seen

6    by them without further incident. (*Id*. ¶ 20.)

7    Defendant Carpenter filled out an incident report, indicating that Plaintiff claimed that the

8    food slot was closed on his arms. (ECF No. 133-2 at 2.) He asked for an x-ray, and said he was

9    bleeding with bruises and swelling. (*Id*.)

10   According to defendant Carpenter, when she responded to the unit on this occasion, she

11   observed superficial scrapes to Plaintiff's right thumb and small areas of dried blood, but no

12   bruising, swelling or bony abnormalities. (Carpenter Decl., ECF No. 132-8 ¶ 7.) The incident

13   report notes that he had four to five areas with a very small amount of dried blood, and a scrape

14   on his right thumb approximately one centimeter in size. (ECF No. 133-2 at 2.) The injuries are

15   described as all superficial. (*Id*.) Plaintiff was advised to wash the areas of dried blood with

16   soapy water and keep them dry, and he was issued an ibuprofen pain pack. (Carpenter Decl.,

17   ECF No. 132-8 ¶ 8; ECF No. 133-2 at 2.)

18   Plaintiff received a notice of charges concerning this incident. (ECF No. 132-12.)

19   Defendants assert that they only used force on Plaintiff after he rushed his door and

20   captured the food slot by sticking his arms outside the slot. (ECF No. 132 at 22.) Hernandez then

21   became physically aggressive and tried to grab the pill call nurse, and spit and attempted to pull

22   Officer Malay toward the door. (*Id*.) They maintain that the amount of force used was that which

23   was necessary to regain control of the situation. (*Id*.) They grabbed Plaintiff's arms to push them

24   back through the food slot. (*Id*.)

25   Plaintiff cites the excessive force standard and concludes that Malay and Rowley acted

26   maliciously and sadistically in order to cause him harm. (ECF No. 146 at 32, 51, 98.) He

27   maintains that they used more than *de minimis* force, and instead they shoved, pushed, and

28   twisted his arms and slammed the food slot down on him. (*Id*. at 69.) He contends that he

1  suffered more than *de minimis* injuries in the form of bruises and cuts on his arms, knuckles and

2  finger, as well as injuries to his shoulder. (*Id*. at 70, 84.) He maintains that he did not provoke the

3  attack, but was not violent and did not refuse to follow the officer's instructions. (*Id*.) He asserts

4  that he offered no physical or verbal resistance. (*Id*. at 93.) He corroborates his statements with

5  reference to a kite and grievance he filed regarding the incident, as well as an affidavit he made

6  out in support of his appeal of the disciplinary action that resulted from this incident. (ECF No.

7  146 at 140-41; ECF No. 146-1 at 183-198, 210-212, 216-242.)

8      **3. Analysis**

9      The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S.

10  Const.  amend.  VIII. It "embodies broad and idealistic concepts of dignity, civilized standards,

11  humanity, and decency." *Estelle v.  Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

12  quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

13  unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v.  Albers*, 475

14  U.S. 312, 319 (1986)).

15      "[W]henever prison officials stand accused of using excessive physical force in violation

16  of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

17  faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

18  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

19  *McKinney*, 394 F.3d 710, 711 (9th Cir.  2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

20  Cir.  2003). "When prison officials maliciously and sadistically use force to cause harm,

21  contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

22  475 U.S. at 327).

23      In determining whether the use of force is excessive, courts are instructed to examine

24  "the extent of the injury suffered by an inmate[;]" "the need for application of force, the

25  relationship between that need and the amount of force used, the threat 'reasonably perceived by

26  the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'"

27  *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

28

1    An inmate need not establish serious injury; however, the lack of serious injury is

2    relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

3    "The extent of injury may also provide some indication of the amount of force applied." *Id*.

4    That being said, not "every malevolent touch by a prison guard gives rise to a federal

5    cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments

6    necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided

7    that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S.

8    at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who

9    complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a

10   valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are

11   only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is

12   gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely

13   because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79.

14   If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's

15   damages will likely be limited. *See id*. at 1180.

16   Rowley and Malay maintain that Plaintiff's conduct of rushing the food slot, trying to

17   grab the nurse and Malay's duty belt and spitting at Malay resulted in the use of minimal force to

18   get Plaintiff's hands inside the food slot in order to protect nursing staff.  If Plaintiff's version of

19   events are believed, Plaintiff obeyed all instructions given by the officers and still they utilized

20   an excessive amount of force in twisting and shoving his arms and slamming the food slot closed

21   on him, causing him to suffer cuts and bruises to his arms, knuckles, fingers and shoulders.

22   Taking the facts in the light most favorable to Plaintiff, the court concludes that a genuine

23   dispute of material fact exists as to whether force was used maliciously and sadistically in an

24   effort to cause harm to Plaintiff or in a good faith effort to restore discipline. As a result,

25   motion for summary judgment of defendants Malay and Rowley as to the excessive force claim

26   in Count III should be denied.

27   ///

28   ///

- 25 -

1

2                                  **IV. RECOMMENDATION**

3          **IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

4          (1) **DISMISSING** Erik Lyons pursuant to Federal Rule of Civil Procedure 4(m);

5          (2) **GRANTING IN PART AND DENYING IN PART** Defendants' motion for

6   summary judgment (ECF No. 132) as follows: the motion should be granted as to all claims

7   except the Eighth Amendment excessive force claim against defendants Malay and Rowley in

8   Count III.

9          The parties should be aware of the following:

10         1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

11  this Report and Recommendation within fourteen days of receipt. These objections should be

12  titled "Objections to Magistrate Judge's Report and Recommendation" and should be

13  accompanied by points and authorities for consideration by the district judge.

14         2. That this Report and Recommendation is not an appealable order and that any notice of

15  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

16  until entry of judgment by the district court.

17  DATED: November 16, 2015.

18                                              _____
                                                WILLIAM G. COBB
19                                              UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28